*Formatted for Electronic Distribution*                                                                                           *Not for Publication*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
March 30, 2012

_____
In re:
    **Patrick B. McKenzie and**                                                            Chapter 7 Case
    **DonnCherie McKenzie,**                                                                # 09-11174
               **Debtors.**
_____
**Patrick B. McKenzie,**
             **Plaintiff,**
v.                                                                                                                Adversary Proceeding
**Educational Credit**                                                                                 # 10-1018
**Management Corporation,**
             **Defendant.**
_____

*Appearances:*  *Patrick B. McKenzie.*                                                *Gary L. Franklin, Esq.*
                    *Burlington, Vermont*                                                *Burlington, Vermont*
                    *Plaintiff Pro Se*                                                         *For the Defendant*

**MEMORANDUM OF DECISION**
**GRANTING JUDGMENT IN FAVOR OF THE DEFENDANT**

      Patrick B. McKenzie (the "Plaintiff") initiated the instant adversary proceeding against the holder of his student loans for a determination of whether those loans could be discharged in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).[1]  For the reasons set forth below, the Court determines that the Plaintiff has not met his burden under the test enunciated by the Second Circuit in <u>Brunner v. New York State Higher Educ. Servs. Corp.</u>, 831 F.2d 395 (2d Cir. 1987) governing dischargeability of student loans, and therefore the Plaintiff's student loan obligations are not discharged.

**JURISDICTION**

      This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**PROCEDURAL BACKGROUND**

      The Plaintiff and co-debtor DonnCherie McKenzie (together, the "Debtors") filed a voluntary Chapter 7 petition on October 6, 2009 (# 09-11174, doc. # 1).  On January 5, 2010, the Court entered an order discharging the Debtors (# 09-11174, doc. # 10).  On April 20, 2010, the Plaintiff filed a complaint

---

[1] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

pro se initiating this adversary proceeding (# 10-1018, doc. # 1),[2] seeking to determine the dischargeability of his student loan debts.[3] On November 1, 2011, the Court held an evidentiary hearing, at which only the Plaintiff testified, and then took the matter under advisement.

### FINDINGS OF FACT

On June 23, 2011, Educational Credit Management Corporation (the "Defendant") filed a final pre-trial statement, including a statement of material facts (doc. # 58). On June 27, 2011, the Plaintiff filed a separate pre-trial statement and statement of material facts (doc. # 59). On August 22, 2011, the Court entered an order, inter alia, directing the Plaintiff to clarify whether he was disputing the Defendant's status as the holder of the promissory note at issue in this adversary proceeding or the outstanding amount of the loan as asserted by the Defendant (doc. # 62). On September 12, 2011, the Plaintiff filed a response to the order (doc. # 64), and the parties filed a supplemental joint pre-trial statement stipulating to certain facts (doc. # 65). Based on the pre-trial record in this adversary proceeding, the Court makes the following findings of fact:

1. The Plaintiff was born on October 12, 1951 (doc. # 58, p. 2, ¶ 1; doc. # 59, p. 2, ¶ 1).
2. The Plaintiff is married and resides in Burlington, Vermont (doc. # 58, p. 2, ¶ 2; doc. # 59, p. 2, ¶ 2).
3. The Debtors received a bankruptcy discharge on January 5, 2010, discharging debts in the amount of approximately $550,226 (doc. # 58, p. 3, ¶ 3; doc. # 59, p. 3, ¶ 3).[4]
4. The Plaintiff has one grown daughter who is not a dependent (doc. # 58, p. 3, ¶ 4; doc. # 59, p. 3; ¶ 4).
5. The Plaintiff retired from the United States Postal Service on December 31, 2004 (doc. # 58, p. 3, ¶ 5; doc. # 59, p. 3, ¶ 5).
6. Starting in 2005, the Debtors owned and operated a bookkeeping business in Florida, which they dissolved in 2009 (doc. # 58, p. 3, ¶ 6; doc. # 59, p. 3, ¶ 6).
7. The Plaintiff performs as a member of a musical group for the purpose of earning additional income (doc. # 58, p. 3, ¶ 7; doc. # 59, p. 10, ¶ 33).

---

[2] Hereafter, all document numbers refer to the instant adversary proceeding, AP # 10-1018, unless otherwise indicated.

[3] The Plaintiff originally filed the complaint against Michael S. Dunlap and Nelnet Inc. (see doc. # 1). On June 2, 2010, the Court entered an order granting the motion to substitute Educational Credit Management Corporation as party defendant (doc. # 9).

[4] The parties appear to have reached this figure by totaling the debts listed on the Debtors' Schedules D and F (see # 09-11174, doc. # 1, p. 8). Dischargeability of the Plaintiff's student loan debt to the Defendant is determined by the instant adversary proceeding.

8. In 2010, the Debtors' combined total income was approximately $40,071 (doc. # 58, p. 3, ¶ 11; doc. # 59, p. 5, ¶ 18).

9. On October 10, 2000, and October 1, 2001, the Plaintiff obtained two student loans in the amount of $15,000 and $24,000 to pay for his daughter's education at Berklee College of Music in Boston, Massachusetts (the "Loans") (doc. # 58, p. 4, ¶ 14; doc. # 59, p. 4, ¶ 11; doc. # 65, ¶ 1).

10. On May 8, 2006, the Plaintiff consolidated the Loans, executing a consolidated note with Nelnet, Inc., in the amount of $27,191.57, with a monthly obligation of $209.53 (the "Note") (doc. # 58, p. 4, ¶ 15; doc. # 59, p. 4, ¶ 12; doc. # 65, ¶ 2).

11. The Defendant is the guarantor of the debt held by Nelnet, Inc., and the current holder of the Note (doc. # 65, ¶ 3).

12. As of April 14, 2011, the outstanding principal balance on the Note was $29,324.70 (doc. # 65, ¶ 3).

## DISCUSSION

Section 523(a)(8) of the Bankruptcy Code provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

   (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

   (A)

      (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit . . . .

11 U.S.C. § 523(a)(8)(A)(i). A student loan will not be discharged unless the debtor "affirmatively secures a hardship determination." Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 450 (2004).

In the Brunner case, the Second Circuit announced the standard for "undue hardship" that this Court must apply for a debtor to have student loans discharged as an undue hardship. The standard requires the debtor to establish that:

A) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

B) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

C) the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396. It is the debtor's burden to prove each of the three prongs of the Brunner test. Lehman v. New York Higher Educ. Servs. Corp. (In re Lehman), 226 B.R. 805, 808 (Bankr. D. Vt. 1998) (Conrad, J.). If the debtor cannot satisfy each prong of the Brunner test, he or she is not entitled to

3

discharge the student loan. Williams v. New York State Higher Educ. Servs. Corp. (In re Williams), 296 B.R. 298, 302 (S.D.N.Y. 2003) (quoting Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 306 (3d Cir. 1995)); see also Thoms v. Educ. Credit Mgmt. Corp. (In re Thoms), 257 B.R. 144, 148 (Bankr. S.D.N.Y. 2001); Lehman, 226 B.R. at 808. The debtor must prove his or her case by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 287 (1991); see also Maulin v. Salliemae (In re Maulin), 190 B.R. 153, 157 (Bankr. W.D.N.Y. 1995).

The Brunner standard is an exacting one, and is particularly difficult to establish without benefit of counsel. The Plaintiff did an admirable job responding to counsel's pre-trial pleadings and presenting his case, addressing a complex legal issue, to the best of his ability. However, the Court cannot provide procedural or legal guidance to pro se parties, non-lawyers face a significant challenge navigating the procedural and legal requirements of litigation, and the Court and must apply the law in the same fashion whether a plaintiff proceeds with or without counsel. See Norasteh v. Boston Univ. (In re Norasteh), 311 B.R. 671, 677–79 (Bankr. S.D.N.Y. 2004).

### A. *The "Minimal Standard" Prong*

To prove the "minimal standard" prong of the Brunner test, the Plaintiff must show that he cannot, based upon his current income and expenses, both maintain a "minimal" standard of living and repay his student loans.

The Plaintiff retired from the United States Postal Service on December 31, 2004 (see Findings of Fact ¶ 5, supra). At the November 1, 2011 trial, the Plaintiff testified that he currently receives a pension of approximately $1,970 per month. The Plaintiff's most recently amended Schedule I (showing his income as of May 2, 2011) was admitted into evidence as part of the Plaintiff's Exhibit 10; it indicates that the Plaintiff receives pension or retirement income of $1,970.29 (Pl.'s Ex. 10, p. 3).[5] The Plaintiff also performs with a musical group to earn additional income (see Findings of Fact ¶ 7, supra). At the trial, the Plaintiff testified that he was trying to make a living as a musician. The Debtors' joint bank account history was admitted into evidence as the Defendant's Exhibit I. It shows that the Plaintiff made seven purchases at Ri Ra during the period from June 4, 2010 to July 6, 2010, the period covered by the most current bank statement admitted into evidence (Def.'s Ex. I, pp. 1–4). The Plaintiff testified that he was playing as a musician at Ri Ra at that time. However, the Plaintiff did not testify or offer any other

---

[5] The Plaintiff's annuity statement showing his annuity payment for January 2, 2011, which was admitted into evidence as part of the Plaintiff's Exhibit 18, shows a net monthly payment of $2,001.07 (Pl.'s Ex. 18, p. 1). However, the Plaintiff credibly testified that the approximately $30 difference between his annuity statement and the amount he listed on his most recently amended Schedule I was due to an increase in the amount of his health insurance premium withholding. Accordingly, the Court shall rely on the amount the Plaintiff lists on Schedule I as amended on May 2, 2011 (see Pl.'s Ex. 10, pp. 2–3).

evidence as to how much income he earned as a musician while performing at Ri Ra, whether he is currently playing as a musician at Ri Ra or at any other locations, or what income he currently earns, if any, as a musician.

The Plaintiff's most recently amended Schedule I indicates that the Plaintiff's spouse had no income as of May 2, 2011 (Pl.'s Ex. 10, pp. 2–3). At the trial, the Plaintiff testified that his spouse previously held a one-year, part-time assignment through a staffing agency from April 2010 through April 2011, but then lost her only source of income when the assignment ended. The Plaintiff admitted that although his spouse does not have a permanent job, she currently works "off and on" on a part-time basis. The Plaintiff's previously amended Schedule I (as of August 30, 2010), which was admitted into evidence as part of the Defendant's Exhibit H, indicates that the Plaintiff's spouse previously had average monthly income of $1,136.24 for her part-time work (Def.'s Ex. H, pp. 1, 31). However, the Plaintiff did not testify or otherwise offer any evidence showing the amount of income his spouse contributes from her current part-time employment.[6]

The Plaintiff bears the burden of proving each prong of the Brunner test. See Lehman, 226 B.R. at 808. Here, the Defendant raised several questions at trial regarding the Plaintiff's current net monthly income, including the amount of his current income as a musician and the amount his spouse currently contributes to the household from her part-time work. The Plaintiff failed to present any evidence on these points. Consequently, the record is insufficient, with respect to the Plaintiff's current income, for the Court to make a determination as to whether the Plaintiff has satisfied the "minimal standard" prong of the Brunner test.

On the expense side, the Plaintiff's most recently amended Schedule J (as of May 2, 2011), which was admitted into evidence as part of the Plaintiff's Exhibit 10, reflects that as of that time the Plaintiff had expenses of $600 for rent, $280 for electricity and heating fuel, $27 for water, $200 for telephone, $194 for cable/internet and garbage, $550 for food, $100 for clothing, $130 for transportation expenses, $100 for recreation, $5 for life insurance, $107 for auto insurance, $210 for his student loan payment, $350 for medical co-payments, and $60 for pet care, for total monthly expenses of $2,913 (Pl.'s Ex. 10, pp. 2, 4). At trial, in response to questions from the Defendant's counsel, the Plaintiff testified that: his

---

[6] At trial, the Plaintiff also testified that he receives some refunds for tax withholding, and that he received approximately $300 the previous year. The Plaintiff's 2010 federal tax return, which was admitted into evidence as part of the Plaintiff's Exhibit 19, shows that the Plaintiff received a 2010 tax refund of $350 (Pl.'s Ex. 19, p. 8). The Debtors' joint bank account history indicates that the Plaintiff received a Vermont state tax refund in the amount of $696 on February 5, 2010, and a federal tax refund in the amount of $1,682 on February 19, 2010 (Def.'s Ex. I, pp. 18–19). The Plaintiff admitted that he received the two 2009 tax refunds for his pension withholding, but credibly testified that he had increased the amount of his withholding to $100 at that time because he was concerned about having to pay taxes based on a change in residence. It is not clear from the testimony and exhibits presented at trial whether the Plaintiff expects to receive a 2011 tax refund.

5

telephone expense includes $25 per month for a fax line; his cable/internet and garbage expense includes $162 per month for a cable and internet "double play" package; his clothing expense is $100 per month because the Debtors lost clothes in Florida and needed new clothes when they returned to Vermont, and the Plaintiff's spouse needed office clothes; his transportation expense is for $130 per month in gasoline costs; his $100 per month recreation expense is for a newspaper subscription, a video rental subscription, and to attend music events and eat at restaurants a few times per month; and his $60 per month pet care expense is for medical expenses for his elderly cat.

"[A] court should examine the debtor's standard of living, with a view toward ascertaining whether the debtor has attempted to minimize . . . expenses." Burton v. Educ. Credit Mgmt. Corp. (In re Burton), 339 B.R. 856, 870 (Bankr. E.D. Va. 2006) (quoting U.S. Dep't of Health & Human Servs. v. Smitley (In re Smitley), 347 F.3d 109, 117 (4th Cir. 2003)). At trial, the Defendant called into question whether the Plaintiff sufficiently minimized his expenses. The Court is not persuaded by the Plaintiff's testimony that his monthly expenses of $25 for a fax line, $162 for cable and internet, $100 for clothing, $130 for gasoline, $100 for recreation, and $60 for pet care, totaling $577, are reasonable and necessary as budgeted. The Plaintiff has failed to provide the Court with additional testimony or other evidence demonstrating their reasonableness, or his efforts to minimize his expenses, as required to satisfy the minimal standard prong of the Brunner test.

The Plaintiff's student loan payment is $209.53 per month (see Findings of Fact ¶ 10, supra; see also Pl.'s Ex. 10, p. 4). The Plaintiff's most recent statements of monthly income and monthly expenses show a negative net monthly income of -$942.71 (Pl.'s Ex. 10, p. 4). However, the Plaintiff acknowledged that his spouse was currently employed part-time and contributing to the household income and failed to provide evidence of the amount of their actual current household income. Likewise, he failed to offer evidence that he is minimizing expenses or that his actual monthly expenses are necessary and reasonable. It is the Plaintiff's burden to prove his actual net income, the reasonableness of all expenses, and his inability to make the $210 per month student loan payment. It may be that if the Plaintiff presented this evidence at trial, he might have demonstrated he cannot afford the student loan payment as required by Brunner. However, he failed to meet this burden of proof. In the absence of sufficient evidence as to the amount of the Plaintiff's current income and the reasonableness of his current expenses, the Plaintiff cannot establish by a preponderance of evidence that he is unable, based upon his current income and expenses, to both pay his student loan payment and maintain a minimal standard of living, as required by the first prong of the Brunner standard.

### B. The "Future Prospects" Prong

The Court's determination that the Plaintiff failed to prove the first prong of the Brunner test obviates the need to examine the two other prongs because "[i]f one of the requirements of the Brunner test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." Faish, 72 F.3d at 306. Nonetheless, this Court also addresses the future prospects prong of the Brunner test, and finds that the Plaintiff's failure to provide sufficient evidence on this prong is an additional basis compelling the Court to deny the discharge of the student loan debt at issue in this adversary proceeding.

The second Brunner prong requires the Debtor to establish by a preponderance of the evidence that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans," or, stated another way, "[r]equiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to pay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" Brunner, 831 F.2d at 396. "Additional, exceptional circumstances" have been described as circumstances where "the debtor experienced an illness, developed a disability, or became responsible for a large number of dependents after receiving the [student] loan." Thoms, 257 B.R. at 149; see also Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 287 B.R. 132, 142, 144 (Bankr. D. Vt. 2001). This Court has found that the second prong has been met where the debtor exhibited a combination of low income and exceptional circumstances so severe that the debtor would not have been able to repay the loans. See King v. Vt. Student Assistance Corp. (In re King), 368 B.R. 358, 370–73 (Bankr. D. Vt. 2007); see also Kelsey, 287 B.R. at 143–44.

At the November 1, 2011 trial, the Plaintiff testified that he worked for the United States Postal Service continuously from January 1973 until his "last day of service" on December 31, 2004. He further testified that in the spring of 2004, he became unable to continue to perform his assigned duties due to medical and psychological health duties, and applied for disability retirement. A letter from the Office of Personnel Management dated November 22, 2004, which was admitted into evidence as the Plaintiff's Exhibit 2, indicates receipt of the Plaintiff's application for disability retirement (Pl.'s Ex. 2). The Plaintiff admitted that his application for disability retirement was not approved, and that the Office of Personnel Management instead allowed him to change his request to one for a "reduction in force" early retirement, which became retroactively effective on December 31, 2004.

The Plaintiff testified regarding a number of physical and mental health issues. He testified that he began seeing a psychotherapist in 1988 for assorted mental health issues. The Plaintiff also testified that after moving to Florida in 2005, he experienced heavy weight gain, depression, and anxiety, and that he

7

sought medical help for hypertension, depression, hyperlipidemia, type 2 diabetes, and sleep apnea. He testified that after returning to Vermont in 2009, he sought medical help from various medical professionals, including meeting with his physician regarding his chronic conditions, weight, diabetes, blood pressure, and his family history. The Plaintiff testified that he sought help from the Associates in Orthopaedic Surgery on August 31, 2010. A referral letter from the Associates in Orthopaedic Surgery dated August 31, 2010 was admitted into evidence as the Plaintiff's Exhibit 8 for the limited purpose of showing that the Plaintiff had the appointment (Pl.'s Ex. 8).[7] The Plaintiff testified that his health issues continue to this day, and that he suffers from high blood pressure, high blood sugar, knee problems, and anxiety over his finances. The Plaintiff further testified that he sees a licensed psychologist on a weekly basis for mental health issues, and that he also has extensive dental issues. The Plaintiff's dental treatment plan was admitted into evidence as Plaintiff's Exhibit 9 (Pl.'s Ex. 9, p. 1).[8]

Although the Plaintiff has provided the Court with his own assessment of his various health issues, there is very little corroborating evidence to support his testimony. The Plaintiff provided no listing of prescriptions he is required to take and offered no expert or other testimony to support his declarations of health ailments. The only medical records in evidence are a dental treatment plan and a referral letter showing that the Plaintiff attended a medical appointment, which are not sufficient to prove the Plaintiff's assertion that he has major health issues that would likely persist for a significant portion of the student loan repayment period.[9] See Norasteh, 311 B.R. at 678 ("A judge can observe the witness and hear him describe his symptoms, but a judge cannot make a diagnosis or determine the severity of the impairment based on that alone."). The Plaintiff bears the burden of proving each prong of the Brunner test. See Lehman, 226 B.R. at 808.

Based upon this record, the Court finds that the Plaintiff has not established that there are additional, exceptional circumstances, strongly suggestive of a continuing inability to pay his student loans over an extended period of time, as required by the "future prospects" prong of the Brunner test.

### C. The "Good Faith" Prong

Having found that the Plaintiff has not satisfied either the first or second prong of the Brunner test,

---

[7] The Court sustained the Defendant's objection to the admission of the Plaintiff's Exhibit 8 for any diagnosis contained therein on the basis of that it was hearsay. See Fed. R. Evid. 801, 802.

[8] Only the first page of the Plaintiff's Exhibit 9 was admitted into evidence, as the Court sustained the Defendant's objection to the admission of the second page on the basis that it was hearsay. See Fed. R. Evid. 801, 802.

[9] The Plaintiff sought to admit as exhibits letters from several medical professionals purporting to opine on the medical condition and treatment of the Plaintiff. The Court sustained the Defendant's objections to admission of the exhibits because they were hearsay. See Fed. R. Evid. 801, 802.

8

there is no need for the Court to address whether the Plaintiff has made good faith efforts to repay the subject student loans.

## CONCLUSION

For the reasons set forth above, the Court finds that the Plaintiff has not proven by a preponderance of the evidence that compelling him to repay his student loans would impose an undue hardship as the controlling case law requires; he has not satisfied the first or second prong of the <u>Brunner</u> test. Therefore, the Court holds that the Plaintiff's student loans must be declared non-dischargeable pursuant to § 523(a)(8). The Court will enter an order granting judgment in favor of the Defendant.

The Court has considered all of the arguments of the parties, and to the extent any argument is not specifically addressed in this memorandum it is because the Court has found it to be without merit.

This memorandum constitutes the Court's findings of fact and conclusions of law.

_/s/ Colleen A. Brown_

March 30, 2012  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge